Good morning. Good morning, Your Honor. May it please the Court, I'm Spencer Hall, counsel for William Weinstein and Leanne Weinstein. My co-counsel are seated at the table. Mr. Kahn is the counsel for the Newport Yacht Club, and he has decided to give his time to me, and I'd like to take eight minutes to reserve two, if I might. You bet. Appellants believe this is a case where the district court repeatedly disregarded the summary judgment standard and drew inferences in favor of the City of Bellevue, gave the plaintiffs the benefit of no inferences that should have been given under the summary judgment standard, and basically left this case in what I believe is an untenable state, unfinished. The first example I would offer is this debate about what a SHEP is, a Salmon Habitat Enhancement Project. That was a term used by the City of Bellevue and the Yacht Club and Mr. Weinstein in their settlement agreement in 2004. The provision states that Mr. Weinstein was entitled to build one or more SHEPs in, on, and around his properties, and that the City would cooperate. Mr. Weinstein built an elaborate fish rearing pond with water purification facilities, pumps, filters, industrial quality. He created an artificial stream. He created an artificial pond where fish could be reared. It's not a fish hatchery. Fish don't return there. Fish don't have eggs removed from them there. The eggs were to be purchased, placed in an egg incubation box, reared in this pond with clean water, because Coal Creek has coal tailings in it and is impure, and then released into the stream when they were old enough to survive. They're saying by definition you're not enhancing a habitat, you're building a new thing. That's what they say. Why is that wrong? I will tell you. It's wrong for a number of reasons. First of all, they went to the dictionary and seized one definition of habitat out of more than one definition. If you look at Webster's Honor Bridge Dictionary, the second definition is not the natural place where animals or plants normally live. It is a site that has the kind of environment, such as soil, water, air, where plants normally live, which is what Mr. Weinstein was creating on his property. Second, the terms of the agreement expressly conflict with the court's interpretation of what this project was going to be. Bear in mind this is a term that is not only undefined in the settlement agreement, it is not a term of art defined anywhere in any regulation, any common usage in environmental work, or anywhere. The parties made this up. And what it says is that Mr. Weinstein is going to construct this. So it has to be something that's constructed. It says that Mr. Weinstein has to bear the cost of operating this ship. So clearly the ship is something mechanical and something that has to be operated on dry land and it's not contemplated to be an improvement to the stream bed itself, such as putting in some kind of a dam or something of that nature. The city, on more than just one point, introduced extrinsic evidence of the meaning of this contract, which is inconsistent with its position that it's clear and unambiguous. And in the extrinsic evidence they introduced, one of the things they introduced was what they contended was the final deal point memorandum before the agreement was drafted. And that deal point, which they says was a deal, talks in terms of the ship being facilities. Let me ask you, let's suppose that you're right. I think there's a lot to your argument that it was indeed a fish habitat enhancement project. Why wouldn't the district court's error be harmless? Because the city would be excused from performing anyway on account of the Weinsteins not being otherwise in conformity with their duties. It looks like they were hatching eggs, if I understand it, even though they bought them somewhere else. And a hatchery isn't a permitted use in a residential area in Bellevue. I think there was something else where they had a city code problem too, filling a wetland. That's what the city contends. So why isn't the city excused, even if you're right on it being a salmon habitat enhancement project? Well, as we discussed in our brief, Your Honor, it is not a salmon hatchery under the definition of salmon hatchery. They hatch eggs there, right? You put eggs in a pond. That's correct. And they hatch and turn into little salmon babies. That's correct. That's correct. But most definitions of salmon hatchery, for code purposes, means a facility where the salmon return, you remove eggs. It's a big operation, removing eggs. Is that the way it's defined in the Bellevue City Ordinance? We believe it is, Your Honor. Can you cite to that? Because I've actually watched salmon spawn. The way it works is the female swims up there and dies and drops eggs in the gravel, and the male swims over the eggs and fertilizes them, and then they both try to stay over the eggs until they're totally dead and drift down the stream. You can see it all the time. What happens is the eggs are sitting there on a gravel. They get fertilized, and then eventually they hatch. And it looks like here the eggs are put down there, and I guess they must already be fertilized, and then they hatch. And if there's a specific law that says place where eggs hatch is in the hatchery, I need to see it. All right. I believe we cited that in our brief. But let me say this. You happen to have the words handy? I'll ask my co-counsel to look for it, but I don't have it. I can't point to it right now, but let me make this point. In a fish hatchery, I know what you're talking about, the way salmon naturally spawn. In a fish hatchery, the fish come back and they squeeze the eggs out of them. It's a big operation. We'll look for that site. Where I saw it, nobody touches the salmon. They do it by themselves. Here's the point. Let's say this is found to be, by the court, a fish hatchery within the meaning of the Belgium Code. Mr. Weinstein has a right under this settlement agreement, a continuing right to build one or more ships on his property. The way this case should have been resolved is we should have gotten into the factual issues of what it was about this particular structure that made it unacceptable under the code law or whatever, and figured out what Mr. Weinstein and the Yacht Club could build on there. But instead, what we had was a conclusory summary judgment opinion that said, what you built isn't exactly right, so you lose. So what are we supposed to do? Go try again, build another ship, and have more litigation? The city and Mr. Weinstein and the Yacht Club are at odds because the city is not happy with the obligations they had under the settlement agreement. Now, the district court, what, accepted the first, I'll call it the first, dictionary definition of habitat to define the ship? Correct. Is that what happened? And your position is you can't tell from the agreement whether the parties meant, you know, the first meaning, the second meaning, or some other meaning? My position is that if you think that the dictionary definition is significant, there is a dictionary definition that fits our interpretation of what this meant. But what's your position? What does habitat mean in the ship? Or is it your position that it's just totally ambiguous? My position is that Mr. Weinstein was supposed to be able to use his property to create a friendlier environment for salmon that would help this cold creek restore a salmon run. So what he did was he built a rearing pond. Well, just a minute now. Is that your definition of ship in the agreement? Anything to improve the, you know, the environment? My definition of ship in the agreement would be anything, anything, that Mr. Weinstein constructed that would, for any period of these young fishes' lives or any portion of their life, improve the quality of the water in which they're initially reared, initially born, initially hatched, and would enable them to go into this stream and have a better salmon run because it's a troubled stream with cold violence. And what do you base your definition on? I base it on the agreement. I base it on the fact that the agreement says that this is something that you construct. I base it on the fact that the draft of the agreement the city has offered says that this is something that is a facility. I base it on the fact that the agreement says it is something that you operate on an ongoing basis. So your position is not that the agreement on this point is ambiguous and you need, you know, extraneous evidence. You're saying the meaning of the agreement is clear and it's the way you define it. Well, I'd be happy with that interpretation, but actually I think it's ambiguous, Your Honor. I think you could interpret in our favor if you were going to interpret in anybody's favor, but it's hard to argue that a term like this that these parties created out of whole cloth is not ambiguous. I think it's a question of looking at the words, the draft, and the dictionary definition which says it's not the stream itself. It's any site that has the kinds of things like soil and water and things that are the kinds that these fish normally live in. And I think if you look at that, I think it's a pretty easy win for us, but I'm not going to tell you it's completely unambiguous. So that means what? We reverse and you have a trial on that? That's correct, and we get to present the facts and we get to see demeanor evidence, and I mean that's, I think, what counts. I see you're out of time. Thank you. Good morning. Good morning. May it please the Court, my name is Elaine Spencer, and I represent the city of Bellevue. This case is a breach of contract dispute arising out of a 2004 settlement agreement in which all prior claims were dismissed with prejudice. The plaintiffs released, coveted not to sue, and agreed to hold harmless the city for any claims such as they could have brought in that earlier litigation. Why is he wrong that the term Salmon Habitat Enhancement Project, which is not defined in the agreement, why is he wrong that that is ambiguous? Under Washington law, you construe the agreement based on its terms, and as the judge said, you construe it. If it's a common, ordinary term, you construe it based on dictionary definitions.  To call what the Weinsteins did here Salmon Habitat is like saying that a zoo is salmon, is habitat for the animals in it. I couldn't see that. Pardon? I couldn't see that. It seemed to me that that's pretending that the other words aren't there. I understood that part of the district judge's decision, and it seemed unpersuasive. If I just read it pausing in speech at a different place, Salmon Habitat Enhancement Project, that means making salmon habitat better than it used to be. And it used to be all they had was this polluted creek. So you build a new clean water creek, and they've got a better habitat enhancing salmon habitat. What the record showed, submitted by Mr. Weinstein, is that they, in fact, imported eggs to put in incubation boxes, that they had an industrial water treatment plant, two artificial streams, nine pumps. It's kind of like a lawn enhancement project where you import grass seed. No, well, Your Honor, I respectfully disagree. What you have here is the sort of artificial container place where animals can live, such as a zoo provides, where they may try to make it look like habitat. But what was built on- You think habitat has to be the way it always used to be? No, I think habitat needs to be a place where an animal could live in some sort of natural situation. When I buy peas, if I don't go to the organic section of the grocery store, they don't count as peas. No, they are peas, Your Honor, but they were grown in soil. But they're not natural. They use fertilizer and artificial irrigation, all kinds of stuff. Your Honor, the other thing I'd like to draw the Court back to, because- I mean, it seems to me you're just making up some kind of greeny notion of what's real salmon habitat, and it just doesn't say that in the deal. Well, Your Honor, there was another basis which the trial court didn't reach because he thought federal courts should not reach issues of land use law, local land use law, when they don't need to. You're saying, well, just look in the dictionary. I distinctly remember a case where we had a dispute about that on the circuit. It was about the right to keep and bear arms. And I looked in the dictionary, and a bear is a large, furry mammal. A bear is somebody who thinks the stock market's going to go down. Looking in the dictionary, that's kind of an excuse for not exercising judgment about what the words mean. Your Honor, I think the trial judge did believe that after 15 years of litigating about salmon issues in this district, he knew what salmon habitat was. And salmon habitat is routinely enhanced. Salmon habitat enhancements are routinely operated. But a plastic-lined pond that has to have a net put over it to protect any salmon in it from predators, surrounded by thousands of... I think I hear you saying that in the community, this term is understood to mean something. Do I hear you right? I believe that's what the... But that's not the way he decided the case. I believe that the judge actually did believe that not only does the dictionary support what he said, but the other thing... See, if he said anybody who grows up in Seattle, Bellevue, knows what is meant by this, that's one thing. But what he did instead is go to a dictionary and say, this is what habitat means, and this is... I think he relied on the dictionary for what is, in fact, the common understanding. The other thing that I think is really critical here, however, is that there was a second... Is that it was harmless error. Because there was a second and equally compelling reason why the case needed to be dismissed. And that is that the city's obligation to cooperate with the Weinsteins was expressly conditioned by the contract on what Mr. Weinstein did being in compliance with city code. Now, this particular property could have been, at one point, entirely used for salmon habitat enhancement. And had he applied for permits to do what he did, the city would have had to address what he did. But he knew when he bought this property that it was more than 90% Class A wetland, and the wetland buffers and setbacks required by the code. He knew when he bought the property that if he wanted to build a house on this property, the only disturbance that was allowed was 10% of the entire lot. And he knew when he bought the property that the city code required that 100% of the remainder either be the wetland itself, which is to remain undisturbed, or the remainder was to be in a wetland mitigation buffer, which addressed hydrology, biodiversity, wetland functions. He applied for... So he was allowed to build a house in the wetland as long as he did the required wetland mitigation? There is a buffer imposed by city code. He was never allowed to build anything in the wetland itself. The code allowed building in the wetland so long as the appropriate mitigation... But he was allowed to build a house in the buffer setback, where he would not otherwise be allowed to build, based on the plans he submitted in which he said he was going to... The house he built, which consumed 100% of the area that was permitted for house, landscaping, driveway, utilities. He said 100% of the remaining area would be planted in a wetland mitigation buffer that would, in fact, do what the protected area development exception required that he do. And it was only on that basis that he was granted a permit to build his house. Well, what he did instead was to consume 100% of the allowed disturbance area with the house and then build several thousand square feet of additional deck, which he said he needed so that he could maintain his hatchery. Planted his front yard with exotic vegetation. Planted the backyard with a huge lawn and this plastic-lined pond. Now, the issue arose here. Let's see. He got the... In order to get the permit, he'd have to show appropriate conformity. He got the permit, so they approved what he proposed as appropriate. And you're saying what he built was different from what was approved in his permit? What he built was entirely different from what he said he was going to build, what he was required to build if he wanted to build a house. You mean what was in the permit, or do you mean oral discussions separate from the permit? No, the permit plans are in the record, and you can review them, and you can review then what he built instead. And the problem here, he brought this lawsuit as a result of a code enforcement action when the city discovered that he had built none of what was required as a condition of building the house and said, wait a minute, you can't occupy the house. And he said, no, no. In spite of the protected area development exception, in spite of the plans that we submitted, in spite of the representations we made to get those permits, you have to allow this, including... I'm not sure what this has to do with the case, though. As far as I can tell, your only gripe with him is that he didn't build a berm. No. Our gripe with him, he sued us claiming that he was allowed to violate... That's his gripe with you. What's your gripe with him? Our gripe with him is that he didn't build a berm on the other property. That's what I just said. Well, you have this code enforcement proceeding going, is that right? It has been resolved with a voluntary correction order. All right. So that's all in the past. Yes. So that's not an issue anymore. That's right. He's taking all of this out under the voluntary correction order. Okay. I think we're out of time. Thank you very much, Ms. Spencer. I believe you used up your time, Mr. Hawley. We'll give you one minute for rebuttal if you'll keep it to that, please. I will do my best. I owe Judge Kleinfeld an answer to where in the record we talked about the fish hatchery. It's at page 11 of Appellant's brief. Is that a sufficient reference? Thank you. Thank you. I think counsel's argument is essentially a closing argument. The fact is the city was mad, and I owe an apology to Mr. Kahn. He said, make it clear that this duty to cooperate by the city was owed to the Yacht Club. This just isn't a Weinstein matter. The city was mad at Mr. Weinstein about the house. The house has been resolved, and so they didn't cooperate. Cooperate is inherently factual question. At one point they told him that this ship was fine if it was biologically equivalent to something else they wanted. A report was submitted saying it was biologically equivalent, and then they got mad and said he couldn't do it. Biological equivalence is inherently factual question. This is riddled with factual questions. My question is, if the court doesn't go ahead and deal with this case, what can Mr. Weinstein build that will satisfy the city? And the Yacht Club build. Thank you, Your Honor. Thank you. Ms. Spencer, thank you, too. The case just argued is submitted. We'll stand at recess for today.
judges: Kleinfeld, Tashima, Silverman